## Case No. 11,689.

REISSNER et al. v. SHARP.

[16 Blatchf. 383; 4 Ban. & A. 366; 16 O. G. 355.] [1]

Circuit Court, S. D. New York. June 7, 1879.

PATENTS — LIMITATION OF FOREIGN GRANT — FOREIGN EXTENSION.

Under section 4887 of the Revised Statutes, which provides, that "every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term," a patent granted by the United States, October 20th, 1874, for 17 years from that day, was held to have expired on the 15th of May, 1878, because a patent was granted in Canada, under the authority of the patentee, for the same invention, on the 15th of May, 1873, for 5 years from that day, although, in March, 1878, the Canada patent was extended for 5 years from the 15th of May, 1878, and, also, for 5 years from the 15th of May, 1883.

[Cited in Bate Refrigerating Co. v. Gillett, 13 Fed. 558; Holmes Electric Co. v. Metropolitan Burglar Alarm Co., 21 Fed. 459; Canan v. Pound Manuf'g Co., 23 Fed. 187; Paillard v. Bruno, 29 Fed. 865; Huber v. Myers Sanitary Depot, 33 Fed. 49; Huber v. N. O. Nelson Manuf'g Co., 38 Fed. 831; Pohl v. Anchor Brewing Co., 39 Fed. 784; Bate Refrigerating Co. v. Hammond Co., 129 U. S. 153, 9 Sup. Ct. 228.]

[This was a bill in equity by Christopher Reissner and others against James L. Sharp.]

Benjamin F. Lee, for plaintiffs.

Arthur v. Briesen, for defendant.

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission.]

BLATCHFORD, Circuit Judge. Letters patent of the United States were granted to John A. Frey, October 20th, 1874 [No. 156,-149], for an "improvement in coal oil stoves," for 17 years from that day. They were reissued to C. Reissner & Co., assignees, June 19th, 1877. [No. 7,751.] The plaintiffs, composing the firm of C. Reissner & Co., and owners of the reissue, bring this suit against the defendant, for an alleged infringement of the reissue, and have moved for a preliminary injunction. Several defences are set up, but, as one of them is regarded as fatal to the motion, the others are not considered.

The original patent was granted while section 4887 of the Revised Statutes was in force. That section is still in force. It provides as follows: "No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented, or caused to be patented, in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years." On the 15th of May, 1873, a patent, No. 2,366, was granted by the dominion of Canada to one James Henry Thorp. This patent says: "No. 2,366. Canada. Patent of Invention. Whereas James Henry Thorp, of the city of Ottawa, in the county of Carleton, in the province of Ontario, gentleman, has, in pursuance of 'the patent act of 1872,' by his petition to the commissioner of patents, stated that one John Augustus Frey, of Jersey City, in the county of Hudson, in the state of New Jersey, one of the United States of America, mechanic, has invented new and useful improvements in coal oil stoves, the title or name whereof is the 'Summer Queen Coal-Oil Stove,' and, in effect, that, by instrument dated on or about the tenth day of April, in the year of our Lord one thousand eight hundred and seventy-three, the said John Augustus Frey has assigned to the petitioner, James Henry Thorp, the right of obtaining the patent and the exclusive property in the said invention, and that such the invention of the said John Augustus Frey was not known or used by others before the said John Augustus Frey's invention thereof, and not being, at the time of the present application, in public use or on sale for more than one year previous to his said application, in Canada, with his consent or allowance, and that the said James Henry Thorp has elected his domicile at the city of Ottawa, in the province of Ontario, in Canada, and whereas the said James Henry Thorp has also complied with the other requirements of the said act: The present

patent grants to the said James Henry Thorp, his executors, administrators and assigns, for the period of five years from the date of these presents, the exclusive right, privilege and liberty of making, constructing and using, and vending to others to be used, the said invention of John Augustus Frey, and which is called or known by the title or name of the 'Summer Queen Improved Coal-Oil Stove,' and whereof a short description is as follows: It consists, 1st, in the water-tight casings, G, G, and tubular connections, H, H, secured to the wick-tubes and bottom of water-chamber, and enclosing the ratchet-wheels, C, C, and shafts, D, D; 2d, in the struts, I, applied, as set forth, for supporting the chimney ring, J, from the wall of the water-chamber; and, 3d, in hinging the chimney, N, to a strut, L, or its equivalent, for the purpose set forth. But, for fuller detail of the invention, reference must be had to the specification and drawing, one duplicate whereof is hereunto annexed and forms an essential part of this patent. Provided, that the grant hereby made is subject to adjudication before any court of competent jurisdiction. And further, that this patent is subject to the condition, that the same and all the rights and privileges hereby granted shall cease and determine, and the patent shall be null and void, at the end of two years from the date hereof, unless the patentee, his executors or administrators, or his assignee or assignees, shall, within that period, have commenced, and shall, after such commencement, continuously carry on, in Canada, the construction or manufacture of the invention hereby patented, in such manner that any person desiring to use it may obtain it, or cause it to be made for him at a reasonable price, at some manufactory or establishment for making or constructing it in Canada. And, further, that this patent shall be void, if, after the expiration of twelve months from the granting hereof, the patentee, his executors or administrators, or his assignee or assignees, for the whole or a part of his interest in the patent, imports or causes to be imported into Canada, the invention for which this patent is granted. In testimony whereof, the Honorable John Henry Pope, Commissioner of Patents, has hereunto signed his name, and the seal of the patent office has been hereto affixed, at the city of Ottawa, in the dominion of Canada, this fifteenth day of May, in the year of our Lord one thousand eight hundred and seventy-three. J. H. Pope. Countersigned, J. C. Taché, Deputy Commissioner." The specification annexed to the said Canadian patent says: "Be it known that I, John Augustus Frey, of Jersey City, in the county of Hudson, and state of New Jersey, one of the United States of America, mechanic, have invented certain new and useful improvements on coal-oil stoves, and I do hereby declare that the following is a full, clear and exact description of the same: The first part of my invention relates to a means

whereby the wick-tubes, above the oil-chamber of a coal-oil stove, can be surrounded with water, thus dispensing with the use of water-wicks for keeping the wick-tubes cool, and it consists in the application to the wick-tubes and base of water-chamber, of an angularly arranged casing to enclose the ratchet-wheels of the wick-tubes, and employment of a tubular connection of the said casing with the outer wall of the water-chamber, for enclosing the shafts of the ratchet-wheels, to prevent water passing through the apertures for such wheels in the wick-tubes to the oil-chamber. The second part of my invention relates to the manner of supporting the base rim or ring on which the chimney rests, by struts from the wall of the water-chamber, whereby the weight of the chimney and cooking utensil placed thereon is removed from the bottom of the water-chamber and thrown against the wall, thus rendering the construction of that part of the stove more durable. The third part of my invention relates to hinging the chimney to its base ring, or to a strut secured to the wall or bottom of the water-chamber, whereby the chimney flues are kept in a proper position over the wick-tubes, without requiring special adjustment, after lighting the wick. Fig. 1 is a transverse, vertical section of a coal-oil stove embodying my invention, on the line a, a, of Fig. 2. Fig. 2 is a transverse, vertical section on the line b, b, of Fig. 1. A is the oil-chamber; B the wick-tubes; C, C, the ratchet-wheels; and D, D, the shafts for operating the wheels C; all constructed and arranged in the ordinary manner. F is the water-chamber, the wall of which rises to a suitable height above the oil-chamber, and not exceeding the base rim, J, of the chimney. G, G, are water-tight casings, secured in the angle formed by the wick-tubes and bottom of water-chamber, enclosing the ratchet-wheels C, C, to exclude water placed in the chamber F for cooling the wick-tubes, from entering the oil-chamber by the apertures in the wick-tubes in which the ratchets operate. The castings G, G, extend the whole breadth of the wick-tubes, and their ends are closed water-tight, thus forming a water-tight compartment or chamber enclosing the ratchet-wheels. To one end of the casing G is secured a water-tight connection H, passing through the wall of the water-chamber, and enclosing the shafts D, D, of the ratchet, so that the shafts can be operated in the usual manner for raising and lowering the wicks, without the possibility of admitting water within the casings. I are struts of any required number or form, secured to the wall of the water-chamber, placed inclinedly inward and fastened to the rim or ring J, on which the chimney N rests, to support said rim or ring fixedly over the wick-tubes. The weight of the chimney and of any utensil placed thereon is thus thrown outwardly against the wall of the water-chamber, and the presence of such weight removed from the bottom of the water-chamber, thereby rendering that part of the stove more durable. K is a hinge connecting the chimney to a strut L, secured to the wall of the water-chamber, and which strut may be further secured by a brace M, bearing on the bottom of the water-chamber, or other convenient arrangement, or the chimney may be hinged to the rim or ring J, as before described. By hinging the chimney to a stationary or fixed support, the flues are kept in position to close over the wicks without special adjustment, when shutting down the chimney after lighting the wicks. Fig. 2 shows the chimney as partly raised for lighting wicks. I claim, as my invention, 1. The water-tight casings, G, G, and tubular connections H, H, secured to the wick-tubes and bottom of water-chamber, and enclosing the ratchet-wheels C, C, and shafts D, D, as and for the purpose set forth. 2. The struts I, applied as set forth, for supporting the chimney ring J from the wall of the water-chamber, as described. 3. In bringing the chimney N to a strut L, or its equivalent, for the purpose set forth. John A. Frey. Jersey City, April 17th, 1873. Signed in the presence of Elisha Cole, David Wood. This is the specification referred to in the affidavit of John Augustus Frey, hereunto annexed. Sworn before me this twenty-fourth day of April, 1873, at her Britannic majesty's consulate general, New York. E. M. Archibald, Consul General, New York." No affidavit of Frey is annexed to the copy furnished to me, other than the above. A drawing with two figures is annexed to the specification. On the margin of the Canada patent are the following two entries: "Extended for a second period of five years under No. 8,496, from the fifteenth day of May, one thousand eight hundred and seventy-eight. J. C. Taché, Deputy Commissioner." "Extended for a third period of five years under No. 8,497, from the fifteenth day of May, one thousand eight hundred and eighty-three. J. C. Taché, Deputy Commissioner." It appears, otherwise, that these two extensions were severally made on the 6th and 7th of March, 1878.

The specification of the original patent to Frey, No. 156,149, granted October 20th, 1874, on an application filed July 8th, 1874, set forth as follows, the specification being signed by Frey: "Figure 1 is a perspective view of my stove as arranged for use; Fig. 2 is a like view of the same, with the upper hinged portion turned to one side, so as to uncover the wick-tubes; and Fig. 3 is a vertical central section upon a line having a right angle to said tubes. Letters of like name and kind refer to like parts in each of the figures. My invention is an improvement upon a similar device which has before been manufactured and sold by me, and which is protected by several patents; and it consists in the peculiar construction of the funnel or chimney, and its combination with the wick-tubes, substantially as and for the

purpose hereinafter shown. In the annexed drawing, A represents the reservoir for containing oil, which reservoir has, preferably, downward and outward flaring sides, and at its upper side and outer edge is enclosed by means of an annular flange, B, that has the height of about one and one-half inch, and is used to contain water for receiving the heat radiated downward from the burners, so as to prevent the same from being communicated to the oil. From the reservoir A two tubes, C and C, extend upward to the required distance, and serve to contain wicks, D and D. of usual shape. Said wicks are moved vertically by means of star-wheels, E and E, which latter are secured upon, and rotate with, suitable shafts, e and e. In order that the wick-wheel shafts e and e may be prevented from becoming warped by the action of the heat, so as thereby to change the relative positions of the wicks and engaging wheel, said parts are located within a suitable housing, c, below the water-line, by which means a perfect protection is afforded, and all liability to derangement avoided. Above and around the upper ends of the wick-tubes C and C is placed a cap, F, that is provided with cone-shaped kerbs, f and f, one of which coincides with each of said tubes, and permits the flame of the burning oil to pass upward from the wick. From the cap F, which is, preferably, constructed from cast metal, a sheet-metal cylinder, G, extends upward about seven inches, and at its upper end is enclosed by a metal head, H, which latter is provided with two openings, h and h, that coincide in position with the wick-tube kerbs f and f, but have considerably larger horizontal dimensions. From each side of each opening h, a flange, h', extends downward, and causes the heated escaping gasses to be deflected toward the ends of said openings, instead, as would otherwise be the case, of passing outward, principally at the longitudinal centre of the same. The cylinder G, cap F, and head H, which form the chimney of the lamp, are hinged so as to permit of being turned to one side, as shown in Fig. 2. An elevated support, I, for cooking utensils, is secured to the upper end of said cylinder, and a number of glazed openings, K and K, are provided in the sides of the latter, completing the apparatus, the operation of which will be readily understood from the foregoing description. Having thus fully set forth the nature and merits of my invention, what I claim as new is: The combined cap and chimney, consisting of the cap F, provided with the kerbs f and f, the sheet-metal cylinder G, and the head H, provided with the openings h and h, and flanges or flue-plates, h' and h', depending from the sides only of said openings, said parts being constructed and combined to operate in the manner and for the purpose substantially as shown."

The specification of the reissue of June 19th, 1877, on which this suit is brought, and the application for which was filed May 24th, 1877, is signed by Frey and sets forth as follows: "Be it known that I, John A. Frey, of New York, New York county and state of New York, did invent certain new and useful improvements in coal-oil stoves, for which letters patent No. 156,149 were issued to me upon the 20th day of October, 1874, which letters patent having been found defective, in that the specification and claims do not cover and embrace all of the original invention, as set forth in the application filed in the patent office on the 8th day of July, 1874: Now, therefore, being desirous of reissuing said letters patent, herewith surrendered, I have prepared and do hereby declare that the following is a full, clear and exact description of the said invention, reference being had to the accompanying drawings, making a part of this invention, in which Fig. 1 is a perspective view of my stove as arranged for use; Fig. 2 is a like view of the same, with the upper hinged portion turned to one side, so as to uncover the wick-tubes; and Fig. 3 is a vertical central section upon a line having a right angle to said tubes. Letters of like name and kind refer to each part in each of the figures. My invention is an improvement upon a similar device which has before been manufactured and sold by me, and which is protected by several patents; and it consists, principally, in a coal-oil stove having its wick-wheels, wick-wheel shafts, and the entire upper surface of its oil-reservoir covered by a water-reservoir, substantially as and for the purpose hereinafter specified. It consists, further, in a coal-oil stove in which the entire upper surface of its oil-reservoir is protected by a water-reservoir, and its wick-wheels and their shafts are enclosed by means of housings that are within said water-reservoir, and below its upper edge, substantially as and for the purpose hereinafter shown. It consists, finally, in the peculiar construction of the funnel or chimney and its combination with the wick-tubes, substantially as and for the purpose hereinafter set forth. In the annexed drawings, A represents a reservoir for containing oil, which reservoir has, preferably, downward and outward flaring sides, and at its upper side and outer edge is enclosed by means of an annular flange, B, that has a height of about one and one-half inch, and is used to contain water for receiving the heat radiated downward from the burners, so as to prevent the same from being communicated to the oil. From the reservoir A, two tubes, C and C, extend upward to the required distance, and serve to contain wicks, D and D. of usual shape. Said wicks are moved vertically by means of star-wheels, E and E, which latter are secured upon and rotate with suitable shafts, e and e. In order that the wick-wheel shafts e and e may be prevented from becoming warped by the action of the heat, so as thereby to change the relative positions of

the wick and engaging wheel, said wheels are located within a suitable housing, c, below the water-line, while said shafts are each contained within a tube, c', that at its inner end communicates with said housing c, and at its outer end passes through the flange B that forms the outer wall of the water-reservoir, by which means a perfect protection is afforded and all liability to derangement is avoided. Above and around the upper ends of the wick-tubes C and C is placed a cap, F, that is provided with cone-shaped kerbs, f and f, one of which coincides with each of said tubes, and permits the flame of the burning oil to pass upward from the wick. From the cap, F, which is preferably constructed from cast metal, a sheet-metal cylinder, G, extends upward about seven inches, and at its upper end is enclosed by a metal head, H, which latter is provided with two openings, h and h, that coincide in position with the wick-tube kerbs f and f, but have considerably larger horizontal dimensions. From each side of each opening 'h a flange, h', extends downward, and causes the heated escaping gases to be deflected toward the ends of said opening, instead, as would otherwise be the case, of passing outward, principally at the longitudinal centre of the same. The cylinder G, cap F, and head H, which form the chimney of the lamp, are hinged so as to permit of being turned to one side. as shown in Fig. 2. An elevated support, I, for cooking utensils, is secured to the upper end of said cylinder, and a number of glazed openings, K and K, are provided in the sides of the latter, completing the apparatus, the operation of which will be readily understood from the foregoing description. It will be seen, that, in consequence of the construction and arrangement of the water-reservoir and of the housings for the wick-wheels and their shafts, a perfect protection from heat is secured for said parts and for the oil-reservoir beneath. Having thus fully set forth the nature and merits of my invention, what I claim as new is: 1. A coal-oil stove having its wick-wheels, wick-wheel shafts, and the entire upper surface of its oil-reservoir, covered by a water-reservoir, substantially as and for the purpose specified. 2. A coal-oil stove in which the entire upper surface of its oil-reservoir is protected by a water-reservoir, and its wick-wheels and their shafts are enclosed by means of housings that are within said water-reservoir and below its upper edge, substantially as and for the purpose shown. 3. The combined cap and chimney, consisting of the cap F, provided with kerbs f and f, the sheet-metal cylinder G, and the head H, provided with the openings h and h, and flanges or flue-plates, h' and h', depending from the sides only of said openings, said parts being constructed and combined to operate in the manner and for the purpose substantially as set forth."

It is very plain that Frey caused what was patented by the Canada patent to be patented by that patent. He assigned to Thorp the right of obtaining the Canada patent, and signed and swore to the specification for the purpose of the obtaining of that patent. The Canada patent was issued before the application for the original United States patent was filed.

The United States patent was granted for an invention which had been previously patented in Canada. So far as the plaintiffs are concerned, the invention claimed in the reissue must be regarded as having been set forth in the original patent. The only question is, whether what is set forth and claimed in the reissue, as the invention, is set forth as the invention in the Canada patent. Under section 19 of the Canada patent act of June 14th, 1872, a patent may be reissued "for the same invention." In the drawings and description of the Canada patent, there is described and shown, as the first part of the invention, what is described and shown and claimed, as part of the invention, in the description and claims and drawings of the United States reissue.

Under such circumstances, the statute requires that the United States patent "shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term," and that in no case shall the United States patent be in force more than 17 years. By section 17 of the Canada patent act of June 14th, 1872, it is provided: "Patents of invention issued by the patent office shall be valid for a period of five, ten or fifteen years, at the option of the applicant; but, at or before the expiration of the said five or ten years, the holder thereof may obtain an extension of the patent for another period of five years, and, after those second five years. may again obtain a further extension for another period of five years, not, in any case. to exceed a total period of fifteen years in all; and the instrument delivered by the patent office for such extension of time shall be in the form which may be from time to time adopted, to be attached, with reference, to the patent, and under the signature of the commissioner, or of any other member of the privy council, in case of absence of the commissioner." It is provided by section 34 of the same act, that "the following fees shall be payable to the commissioner before an application for any of the purposes hereinafter mentioned shall be entertained, that is to say: On petition for a patent for 5 years, $20; on petition for a patent for 10 years, $40; on petition for patent for 15 years, $60; on petition for extension from 5 to 10 years, $20; on petition for extension from 10 to 15 years, $20; on petition for extension from 5 to 15 years, $40." It is contended for the defendant, that, although it be not necessary that the limitation should appear on the face of the United States patent, yet the United States patent must be limited so as to expire at the same time that the Canada patent would expire, according to the

grant of it in force when the United States patent was granted, namely, at the end of five years from the 15th of May, 1873, and that the two extensions severally granted in March, 1878, cannot affect the question. The bill in this case was filed July 7th, 1877, and the defendant appeared August 3d, 1877. For the plaintiffs it is contended, that the United States patent must run until the Canada patent expires, under its extensions, namely, until May 15th, 1888.

In the case of Henry v. Providence Tool Co. [Case No. 6.384], in the circuit court for the district of Rhode Island, before Mr. Justice Clifford, in October, 1878, a similar question arose in regard to a United States patent granted in October, 1871, under section 25 of the act of July 8th, 1870 (16 Stat. 201), which is embodied in section 4887 of the Revised Statutes. The United States patent ran, on its face, for 17 years. A patent for the same invention had been granted to the patentee, in Great Britain, in November, 1860, for 14 years, and it was contended that the United States patent expired, by operation of law, when the English patent expired. In reply, it was urged, that the language of the statute extended not only to the term of the foreign patent in force when the United States patent was granted, but also to the term of any prolongation which the patentee might obtain from the foreign government. The patentee, before the English patent expired, applied for its prolongation, to her majesty, in council. Thirteen days after it expired, an order in council was made for the granting of a new patent for 4 years. Such prolongation operated as an extension of the original term, and the 4 years began to run at the moment when the original term expired. But Mr. Justice Clifford held, that congress never intended to extend the term of the United States patent beyond the legal term secured to the foreign patentee when the United States patent was granted; and that no act of a foreign sovereign, nor any act of a foreign legislature, could have the effect to prolong the term of a patent granted here, beyond the term prescribed by the act of congress. Mr. Justice Clifford refers, with force, to the considerations, that, as the statute refers not only to the foreign patent, but, if there be more than one, to the one having the shortest term, it cannot be held to include any subsequent prolongation or extension of the monopoly beyond that vested in the foreign patentee at the time of the granting of the United States patent; that, if congress had intended otherwise, the language would have been different, and words would have been employed to signify that the domestic patent should continue as long as the same invention was protected by the foreign government; and that, under the opposite rule, neither the authorities of the United States, nor inventors, nor the public, would ever be able to know what the patentee acquired under a patent granted by the United States, in a case where the invention

had been previously patented in a foreign country. Another view applicable to the present case is, that, before the Canada extensions were granted, the defendant had put in a plea to the bill, and the plaintiff had set down such plea for argument. There would, therefore, under the plaintiffs' view, be one rule governing this suit, if it were to be determined according to the state of things existing when it was brought, and there would be another rule governing suits brought on the United States patent after the Canada extensions were granted. The plaintiff suggests a distinction between the case of Henry v. Providence Tool Co. [supra] and this case, because in this case the Canada patent did not expire before it was extended, and because an extension in Canada is not a matter of favor. But it is not perceived that these considerations are of sufficient force to cause any other conclusion as to the plain meaning of the statute to be adopted than that arrived at by Mr. Justice Clifford; and I think such conclusion is the proper one applicable to the present case.

It is contended for the plaintiff, that the second claim of the reissue of June, 1877, which is the only claim in question on this motion, is not patented in the Canada patent; and that no one of the three claims of the Canada patent contains the combination of elements which is embraced in the second claim of such reissue. But I think it quite clear that the statement in the Canada patent of the first part of the invention, and the substance of the first claim of that patent, embody the combination and arrangement found in the second claim of the United States reissue. The motion is denied.

[For other cases involving this patent, see Reissner v. Anness, Cases Nos. 11,686–11,688.]